PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-1615

_____

IN RE: ERIE FORGE & STEEL, INC.,
                                      Debtor

HOURLY EMPLOYEES/RETIREES OF DEBTOR,
                                      Appellants

v.

ERIE FORGE & STEEL INC.; PASCARELLA & WIKER,
LLP; THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS; THE UNITED STEEL WORKERS OF
AMERICA
                                      Appellees

_____

On Appeal from the United States District Court for the
Western District of Pennsylvania
(Civil Action No. 02-cv-00233E)
District Judge: Hon. Sean J. McLaughlin

Argued: January 18, 2005

1

Before: Alito, McKee, Smith, *Circuit Judges*

(Opinion Filed: August 9, 2005)

GEORGE M. SCHROECK, ESQ. (Argued)
Schroeck & Associates, P.C.
338 West Sixth Street
Erie, Pennsylvania 16507
Attorney for Appellants

DAVID R. JURY, ESQ.
Assistant General Counsel United Steelworkers of America
Five Gateway Center, Rm. 807
Pittsburgh, Pennsylvania 15222

RICHARD E. GORDON, ESQ. (Argued)
Grossinger Gordon Vatz, LLP
1000 Law & Finance Building
429 Fourth Avenue
Pittsburgh, Pennsylvania 15219
Attorneys for United Steel Workers of America

DAVID LAMPL, ESQ. (Argued)
KIMBERLY A. COLEMAN, ESQ.
MICHAEL J. ROESCHENTHALER, ESQ.
525 William Penn Place, 30th Floor
Pittsburgh, Pennsylvania 15219
Attorneys for Pascarella & Wiker, LLP and the Official
Committtee of Unsecured Creditors

OPINION

McKee, Circuit Judge

A group of former employees appeal an order of the United States District Court for the Western District of Pennsylvania affirming the Bankruptcy Court's approval of a Stipulation of Erie Forge and Steel, Inc. (the "Debtor" or ""EFS"), the Official Committee of Unsecured Creditors, and the United Steelworkers of America ("USWA"). The Stipulation resolved the pending Application to Modify Retiree Benefits under 11 U.S.C. § 1114. Appellants argue that the district court erred in concluding that they were bound by the Stipulation. For the reasons that follow, we will affirm.

## I. FACTS AND PROCEDURAL HISTORY[1]

EFS is a former steel manufacturing company located in Erie, Pennsylvania. In 1984, its predecessor (National Forge Company) adopted the "Hourly Employees Insurance Plan, National Forge Company, Erie Plant" (hereinafter, the "1984 Benefits Plan"). That Plan was eventually adopted by EFS after it acquired National Forge. The Summary Plan Description of the 1984 Benefits Plan provides that "[t]he Plan may be

---

[1]Because the facts, as set forth by the District Court, accurately reflect the record and are not in dispute, we have substantially excerpted this section of the District Court's decision. *See Hourly Employees/Retirees of Debtor v. Erie Forge & Steel, Inc*. 2004 WL 385023, *1 -4 (W.D.Pa. Feb. 2, 2004).

3

terminated at any time by the Board of Directors of [EFS]."

On or around October 1, 1998, EFS adopted the "Erie Forge & Steel Company Retiree Medical Benefit Plan--A Defined Dollar Structure" (the "DDS Plan"). It was incorporated by reference into an October 1, 1998 Collective Bargaining Agreement between EFS and Local 1573 of the USWA (the "CBA"). The DDS Plan applied to future retirees and employees who retired before 1998 with 25 years of service and who elected the DDS Plan in lieu of their traditional health insurance premium coverage. The DDS Plan provided that EFS could amend or terminate the DDS Plan at its sole discretion.

On December 22, 2000, EFS filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq. Thereafter, it continued operations as a Debtor-in-Possession. At the time of its Chapter 11 filing, EFS employed approximately 25 salaried, and 146 hourly, workers. The hourly employees are and/or were members of the USWA's local affiliates. On January 4, 2001, Richard E. Gordon, Esq. filed his appearance as counsel on behalf of USWA. He has been counsel of record for the Union both in the underlying bankruptcy proceedings and in this appeal.

On or about September 24, 2001, EFS informed its retirees that it would be terminating their benefits at the end of October 2001, and on October 31, 2001, EFS stopped paying retirees' medical benefits. As of that date, all of the appellants were either active employees or they had previously resigned from EFS; none of them had been receiving retirement benefits

4

under either the 1984 Benefits Plan or the DDS Plan.

On November 15, 2001, the Bankruptcy Court approved the sale of substantially all of EFS's assets to the Park Corporation. That same day, the Debtor laid off substantially all of its work force, including those appellants who were still working at EFS.

The Debtor's Plan of Reorganization was filed with the Bankruptcy Court on July 12, 2002 and was confirmed in an order dated August 26, 2002. Under the terms of the Plan, the Park Corporation was to continue the business operations of EFS as a reorganized debtor free and clear of any claims or encumbrances by EFS's pre-petition creditors, including those persons who might have a claim to retirement benefits. The Plan required the remaining assets of the Estate to be pooled into a liquidating trust for the purpose of funding the claims of EFS's creditors.

No appeal was taken from the entry of this Confirmation Order, and the Bankruptcy Court entered a Final Decree Order on November 1, 2002. Meanwhile, pursuant to 11 U.S.C. § 1113, on November 30, 2001, EFS had filed a motion to reject its Collective Bargaining Agreement ("CBA") with the USWA (the "1113 Motion"). The Union opposed that motion. The Union was particularly concerned about unpaid vacation and personal days which its members had accrued in 2000 and

2001.[2] The Committee sought to preclude vacation pay as an allowed administrative claim against the Estate.

Ultimately, the parties negotiated a settlement of the 1113 Motion in the form of an Omnibus Consent Order that the Bankruptcy Court approved and entered on January 8, 2002. Pursuant to that Consent Order, the CBA was terminated subject to a reservation of rights by all parties under 11 U.S.C. § 1114. The USWA recovered $340,386 (representing 90% of its claims) as allowed administrative claims to be paid forthwith to some 172 former hourly employees of EFS. A general unsecured claim in the amount of $37,820 (or 10% of the Union's claims) was also allowed. In addition, the Union was awarded a general unsecured claim of $150,000, representing damages resulting from EFS's rejection of the CBA.[3]

On May 30, 2002, EFS filed its 1114 Motion to determine which, if any, claim would be allowed as a result of its termination of retiree benefits. Initially, the Union opposed the 1114 Motion on the grounds that, *inter alia,* EFS had not

---

[2] Appellants did not dispute or contest the USWA's representation of their interests.

[3] Again, appellants did not dispute or contest their representation by the USWA. A number of the former hourly employees on whose behalf this recovery was obtained are now appellants in this matter.

6

complied with § 1114(f)(1)(A) and had failed to show that the Union declined the proposal without good cause. The Union also maintained that EFS's unilateral termination of benefits as of November 1, 2001 violated section 1114(e) and that EFS had declined to acknowledge the status of any retiree benefits as an administrative expense as required by 11 U.S.C. § 503. The Union initially took the position that the healthcare coverage at issue was the product of collective bargaining which provided for vested, lifetime benefits.

The Committee, on the other hand, asserted that the 1114 Motion was superfluous and that any protections afforded by section 1114 were inapplicable because EFS had merely exercised its right to unilaterally terminate retiree benefits. The Committee maintained that the benefits at issue were not vested and, therefore, no claim could be made against the Estate relative to their termination. The Liquidating Trustee made similar arguments.

Despite its initial opposition to the 1114 Motion, the Union subsequently decided to enter into the Stipulation with EFS, the Committee, and the Liquidating Trustee. The Stipulation resolved the section 1114 Motion by allowing an administrative claim of $500 and an unsecured claim of $5,000 for each of the 77 retirees (or their widows) who retired before the October 31, 2001 termination of retiree benefits. The Union also agreed that those individuals who, although eligible, were not receiving retirement benefits as of October 31, 2001 would be excluded from any share in the allowed administrative and general unsecured claims.

On January 16, 2003, EFS, the Committee, the Liquidating Trustee, and the Union filed their "Joint Application for Approval of Stipulation with Hourly Employees and Motion to Bind Salaried Employees/Retirees to Terms of Stipulation" (hereinafter, "Application for Approval of Stipulation"). The Application for Approval of Stipulation was served on hourly and salaried current and future retirees of EFS. The cover letter explained that hourly employees would receive allowed administrative and unsecured claims under the Stipulation if approved by the Bankruptcy Court, and that former hourly employees who had not retired as of the November 2001 sale would not receive an allowed claim for retiree welfare benefits. The latter employees were told that counsel for the USWA could not represent former hourly employees who might object to the Stipulation because the USWA was seeking approval of the settlement.[4] Certain of the union members were dissatisfied with the Stipulation and sought independent legal representation through George Schroeck, Esq.

On March 24, 2003, Schroeck filed a response to the Application for Approval of Stipulation on behalf of 82 former employees of EFS. Each of those original 82 objectors were Union members who had not retired as of October 31, 2001. In their response, those former employees objected to the Stipulation and requested a court order requiring EFS to

---

[4] Appellants originally represented that the USWA's letter stated that an evidentiary hearing would be scheduled if a former employee objected to the motion to approve the Stipulation. The letter contained no such statement.

8

continue paying full benefits during the pendency of the Chapter 11 proceedings.[5]

Schroeck appeared on behalf of the objectors at a March 26, 2003, hearing on the Application for Approval of Stipulation, and claimed that there were disputed issues of fact which precluded the Bankruptcy Court's approval of the Stipulation. The court responded by adjourning the hearing to give him an opportunity to present the factual disputes. On April 2, 2003, Schroeck submitted a "declaration" on behalf of the former hourly employees in which he asserted, *inter alia,* that the employees' health benefits were vested by virtue of the DDS Plan and the relevant CBAs.

A second hearing on the Application for Approval of Stipulation was conducted on April 8, 2003, and questions were raised about the scope of Schroeck's representation. The Bankruptcy Court opined that Gordon represented all hourly employees and retirees but it nevertheless expressed uncertainty as to whether Schroeck could represent any salaried (i.e., non-union) retirees. The hearing was therefore once again adjourned without final disposition to afford Schroeck an opportunity to ascertain whether any of his 82 putative clients were salaried retirees. On April 24, 2003, Schroeck sent a letter to the court stating: "Dear Judge Bentz, in follow up to my response to your order of April 10, 2003, please be advised that after further

---

[5]As of the date of the Response, the Plan had been confirmed for seven months and EFS had not paid retiree benefits for nearly 18 months.

investigation, I now believe that all the salaried employees (who I may represent) were still actively employed as of October 31, 2001."

On April 30, 2003 the Bankruptcy Court conducted another hearing to resolve issues regarding the Application for Approval of Stipulation. During that hearing, the court reiterated its view that the hourly employees were bound by the Stipulation in which the Union – their authorized representative – had joined. After making some minor modifications to the proposed approval order, the Bankruptcy Court granted the Application for Approval of Stipulation. Thereafter, Schroeck filed a Motion for Reconsideration on behalf of 12 former hourly employees, none of whom had retired as of October 31, 2001. In that motion, Schroeck asserted that the Union had been operating under a conflict of interest in representing both the retired and active hourly employees, and he requested a hearing to challenge the Stipulation based upon the objectors' purported status as "constructive retirees" under § 1114.

The Bankruptcy Court denied the motion for reconsideration. The order denying the motion provided in pertinent part as follows:

> [t]he United Steelworkers of America is the authorized representative of the hourly employees for purposes of 11 U.S.C. § 1114 and therefore, its members are bound by the Stipulation that it entered into which was approved by Order dated April 30, 2003 and accordingly the within Motion for Reconsideration is REFUSED as to hourly

10

employees.[6]

Schroeck appealed to the District Court on behalf of 83 former hourly employees (appellants herein). The District Court dismissed the appeal and affirmed the approval of the Stipulation. The District Court did not address the merits of Schroeck's arguments because the court concluded that the appellants lacked standing to appeal the Order Approving the Stipulation. The District Court rejected appellants' claim that they had standing as "constructive retirees" with rights under section 1114. The court also held that appellants were bound by the Stipulation that the USWA had entered into in good faith. In the District Court's view, the USWA had been appellants' authorized representative because appellants were working for EFS as hourly employees when terminated. This appeal followed.

---

[6] In a subsequent memorandum dated July 15, 2003, the Bankruptcy Court reiterated its previous finding that the Union, as the authorized representative of the hourly employees, had bound the hourly employees to the terms of the Stipulation. The court also concluded that no conflict of interest arose from the Union's simultaneous representation of the hourly retirees on one hand, and the hourly employees on the other. In the court's view, no conflict existed "because the Debtor [had] sold substantially all of its assets, laid off all employees, ceased operation, and terminated its Collective Bargaining Agreement with the Union prior to seeking modification of the retiree benefits."

## II. DISCUSSION [7]

Appellants contend that the District Court erred in ruling that they lack standing under 11 U.S.C. § 1114(c), and that they are bound by the Stipulation entered into by the USWA. For the reasons that follow, we will affirm.[8]

---

[7] Our inquiry is the same as the District Court's review of a Bankruptcy Court's decision. *In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 316 (3d Cir. 2003). Thus, we review findings of fact for clear error and exercise plenary review over legal determinations. *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998).

[8] Because we affirm based on the District Court's conclusion that appellants are bound by the Stipulation their union entered into, we need not address the standing issue here. *See McNamara v. City of Chicago*, 138 F.3d 1219 (7th Cir. 1998) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), for the proposition that, because "the jurisdictional issue is not whether the plaintiffs have been harmed (Article III) but whether they should be allowed to sue for that harm (zone of interests) . . . [t]he latter type of jurisdictional issue ('prudential standing' as it is sometimes called) may be bypassed in favor of deciding the merits."). However, we do note that in *In re: General Datacomm Indus., Inc. v. Arcara*, 407 F.3d 616 (2005), we recently held that "'retired employees,' as contemplated by § 1114, encompasses the concept of 'forced retirement,' at least in situations where . . . employees on the verge of voluntary retirement are strategically and deliberately terminated without cause by a

12

Section 1114(c) of Title 11 states:

(1) A labor organization shall be . . . the authorized representative of those persons receiving any retiree benefits covered by any collective bargaining agreement to which that labor organization is a signatory, unless (A) such labor organization elects not to serve as the authorized representative of such persons, or (B) the court, upon a motion by any party of interest, after notice and hearing, determines that different representation of such persons is appropriate.

(2) In cases where the labor organization referred to in paragraph (1) elects not to serve as the authorized representative of those persons receiving any retiree benefits covered by any collective bargaining agreement to which that labor organization is signatory, or in cases where the court, pursuant to paragraph (1) finds different representation of such persons appropriate, the court, upon a motion by any party in interest, and after notice and a hearing, shall appoint a committee of retired employees if the debtor

---

debtor." *Id*. at 617, 624. That rule is applied on a "case-by-case" basis. *Id*. at 622.

Since we are deciding the case on the more narrow ground that appellants are bound by their union's Stipulation, we need not address appellants' claim that they should be considered "constructive retirees."

13

>seeks to modify or not pay the retiree benefits or if the court otherwise determines that it is appropriate, from among such persons, to serve as the authorized representative of such persons under this section.

11 U.S.C.A. § 1114(c).

"Authorized representative" is defined as "the authorized representative designated pursuant to subsection (c) for persons receiving any retiree benefits covered by a collective bargaining agreement . . ." 11 U.S.C. § 1114(b)(1).

Appellants maintain that they informed the District Court that the USWA had elected not to serve as their authorized representative by virtue of a letter USWA's attorney, Richard Gordon, sent appellants. That letter stated in relevant part:

>Dear former hourly employees . . . . Any objection to the [Application for Approval of Stipulation] by a former EFS employee must be filed with the Bankruptcy Court by March 24th, 2003. For the reasons set forth above, the USWA or its legal counsel cannot represent you should you object to a motion to approve the stipulation.

Even if we interpret that letter as a declaration by the Union that it would not represent appellants, appellants' argument could still not survive the plain language of 11 U.S.C. § 1114. *See In re Resorts Int'l, Inc.*, 181 F.3d 505, 515 (3d Cir. 1999) ("We begin every statutory interpretation by looking to the plain language of the statute. When the language is clear, no further inquiry is necessary unless applying the plain language

14

leads to an absurd result." (citations omitted)). Section 1114(c)(1)(A) provides that a labor organization may elect not to serve "as the authorized representative of those persons receiving any retiree benefits covered by any collective bargaining agreement to which that labor organization is signatory." 11 U.S.C. § 1114(c)(1)(A). However, pursuant to 11 U.S.C § 1114(c)(2), where the labor organization elects not to function as the authorized representative of the employees, the court, "*upon a motion by any party in interest, and after notice and a hearing*, shall appoint a committee of retired employees . . . to serve as the authorized representative of [those persons receiving any retiree benefits covered by any collective bargaining agreement to which that labor organization is signatory]." (Emphasis added).

Thus, even assuming *arguendo* that, by sending the letter, the USWA elected not to serve as appellants' authorized representative, and that appellants were in fact "a party in interest," there is nothing in the record that suggests that appellants ever moved for appointment of any authorized representative other than the USWA. Moreover, at oral argument, counsel for appellants conceded that they had made no attempt to request an appointment under the statute. Accordingly, the USWA continued to function as appellants' authorized representative and had the authority to enter into the Stipulation on their behalf. *See* 11 U.S.C. § 1114(c)(1) ("A labor organization *shall be* . . . the authorized representative of those persons receiving retiree benefits covered by any collective bargaining agreement to which the labor organization is signatory, . . . " (emphasis added)).

15

Appellants' failure to file a motion is also fatal to their contention that the Bankruptcy Court and District Court should have held an evidentiary hearing. Section 1114(c)(2) clearly states that "[i]n cases where the labor organization . . . elects not to serve as the authorized representative . . . the court, *upon a motion by any party in interest, and after notice and a hearing,* shall appoint . . . ." (emphasis added)). 11 U.S.C. § 1114(c)(2). The use of the conjunction "and" indicates that a hearing is only required when an appropriate motion has been filed. That did not happen here. Similarly, appellants cannot rely on 11 U.S.C. § 1114(c)(1)(B), which states that, "A labor organization shall be . . . the authorized representative . . . unless . . . the court, *upon a motion by any party in interest*, *after notice and hearing*, determines that different representation of such persons is appropriate." (Emphasis added).

Consequently, appellants are bound by the Stipulation entered into by the USWA,[9] and the District Court properly rejected their attempt to challenge it in the Bankruptcy Court.

## CONCLUSION

---

[9]Appellants did not appeal the Bankruptcy Court's January 8, 2002 "Omnibus Consent Order to Settle Debtor's Motion to Reject Collective Bargaining Agreement Pursuant to U.S.C. § 1113," even though there is no dispute that appellants' rights under the Collective Bargaining Agreement were affected by this Order, and 11 U.S.C. § 1113 clearly protected those rights. Indeed, many appellants were beneficiaries of the Order.

16

   For the above reasons, we will affirm the District Court's dismissal of appellants' appeal from the Bankruptcy Court's decision.